# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **EARL S. HESS, JR.,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:04CV00023 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **JO ANNE B. BARNHART,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

In this social security case, I affirm the final decision of the Commissioner.

## *I. Background.*

Earl S. Hess, Jr., filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for disability insurance benefits under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2004) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Hess first applied for benefits on April 19, 1999, alleging disability since September 25, 1997, and received a hearing before an administrative law judge ("ALJ") on September 23, 1999. By decision dated March 31, 2001, the ALJ found that the plaintiff was not disabled within the meaning of the Act because there existed a significant number of jobs in the national economy that he could perform. Although the plaintiff exhausted administrative remedies, he did not file a complaint with this court to seek judicial review.

On May 5, 2000, the plaintiff filed the claim that is currently before this court. Hess alleged disability since September 25, 1997, and received a hearing before an ALJ August 8, 2001. By decision dated September 14, 2001, the ALJ found that the plaintiff was not disabled withing the meaning of the Act because there existed a significant number of jobs in the national economy that he could perform. On

November 20, 2002, the Social Security Administration's Appeals Council granted the plaintiff's request for review and remanded the case to the ALJ. On February 5, 2003, the plaintiff received a new hearing, where he sought two separate periods of disability: one from September 25, 1997 to February 25, 2001 and the other from November 1, 2001 to the time of the ALJ's decision. The plaintiff did not seek benefits from February 26, 2001 to November 1, 2001 because he worked full-time during that period. (R. at 327.) By decision dated April 15, 2003, the ALJ again denied the plaintiff's claim and found the he could perform a significant number of jobs in the national economy. Having exhausted administrative remedies, the plaintiff now seeks review in this court.

The parties have briefed the issues, and the case is ripe for decision.

## II. Facts.

The plaintiff was forty-seven years old at the time of the ALJ's decision. He has a ninth grade education and past work experience as a coal mine operator and security guard. Hess claims disability due to multiple impairments, including back pain and depression. He had not engaged in substantial gainful activity from September 25, 1997 to February 25, 2001, and from November 1, 2001, to the time of the ALJ's decision, the two alleged periods of disability.

In rendering his decision, the ALJ reviewed medical records relating to the plaintiff's treatment by William McIlwin, M.D.; Yogesh Chand, M.D.; Nasreen R. Dar, M.D.; Columbia Clinch Valley Medical Center; and state agency physicians; as well as medical experts at the plaintiff's hearing.

Based upon the evidence, the ALJ determined that the plaintiff suffers from a combination of severe impairments and is unable to perform any of his past relevant work. However, the ALJ further determined that the plaintiff retains the residual functional capacity ("RFC") to perform a narrowed range of light work, and, with the assistance of vocational expert ("VE") testimony, the ALJ found that the plaintiff could perform a significant number of jobs in the national economy.

### III. Analysis.

The plaintiff contends that the ALJ's decision is not based on substantial evidence of record. Specifically, he argues that the ALJ erred by failing to give proper weight to the findings and conclusions of Drs. Dar and Chand, the plaintiff's treating physicians. For the following reasons, I disagree.

### A

It is the duty of the ALJ to evaluate all medical evidence and to determine what weight to accord such evidence. *See* 20 C.F.R. §§ 404.1527, 416.927 (2004). The

ALJ is entitled to give less weight to an opinion or any portion of the evidence which is not supported by or is otherwise inconsistent with the other evidence in the record. *See* §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4). The ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion. *See* 20 C.F.R. § 404.1527(d).

Circuit precedent does not require that a treating physician's testimony "be given controlling weight." *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992). While the regulations provide that a treating source's opinion on the nature and severity of impairments will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

A medical expert's opinion as to the ultimate conclusion of disability is not dispositive; opinions as to disability are reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). Generally, an expert's opinion is given more weight the

-5-

more the medical source presents relevant evidence to support it and the better the source explains the opinion. *See id.* § 404.1527(d)(3). In addition, the more consistent the opinion is with the record as a whole, the more weight it will be given. *See id.* § 404.1527(d)(4). Medical findings must also be supported by "medically acceptable clinical and laboratory diagnostic techniques." *See id.* § 404.1526(b) (2004).

In the present case, the plaintiff first asserts that the ALJ erred in not giving proper weight to his treating physician, Dr. Chand. (Pl.'s Br. at 9.) The ALJ gave appropriate weight to Dr. Chand's findings, beginning with a RFC form completed by Dr. Chand regarding the plaintiff's ability to sit without changing positions. (R. at 20.) The ALJ pointed out that the medical expert at the plaintiff's hearing, Dr. Wile, disagreed with Dr. Chand's assessment because, based on the medical reports contained in the record, there was nothing that would indicate that Dr. Chand's limitations were necessary.[1] (R. at 21.) The ALJ also considered a letter from Dr. Chand dated February 4, 2004, which detailed the plaintiff's back problems and ultimately stated that the plaintiff was "unable to engage in any substantial gainful activity as a result of acquired spinal stenosis and multi-level disc injury." (R. at 22.)

---

[1] The form completed by Dr. Chand indicated that the plaintiff would be unable to sit for longer than four hours at a time, one hour uninterrupted, due to chronic back pain. (R. at 20-21.)

-6-

Case 2:04-cv-00023-JPJ-PMS   Document 19   Filed 06/27/05   Page 6 of 11   Pageid#: 70

The ALJ specifically stated that he considered this conclusion, but that it was "not consistent with the remainder of the evidence and therefore . . . not accorded controlling weight." (R. at 24.) Instead, the ALJ explained that he relied upon other medical evidence, including Dr. Wile, "the medical expert at the hearing who agreed that claimant generally retained the ability to engage in work that would entail no lifting above ten pounds frequently and twenty pounds occasionally with standing/walking limited to two hours total out of an eight-hour workday, with sitting limited to six hours, and occasional postural limitations, with environmental restrictions against jobs involving heights, machinery, or vibrations." (R. at 23.) The ALJ further noted that this conclusion was supported by the findings of the state agency medical consults, "who also found that claimant would be capable of performing almost a full range of work at the light exertional level."[2] (R. at 24 (citing Ex. B-9F).) Therefore, rejecting Dr. Chand's conclusion was permissible because there was conflicting evidence on the issue of the plaintiff's physical capabilities from which the ALJ could choose.[3]

---

[2] The ALJ noted that these restrictions were applicable to both periods of time in question. (R. at 23.)

[3] It is the duty of the ALJ to evaluate all medical evidence and to determine what weight to accord such evidence. *See* 20 C.F.R. §§ 404.1527, 416.927 (2004). The ALJ is entitled to give less weight to an opinion or any portion of the evidence which is not supported by or is otherwise inconsistent with the other evidence in the record. *See id.* §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4).

-7-

The ALJ also gave appropriate weight to Dr. Dar, the plaintiff's treating psychiatrist. While the ALJ acknowledged that Dr. Dar concluded that the plaintiff was unable to handle any gainful employment (R. at 21 (citing Ex. B-9F)), he pointed out that this conclusion was inconsistent with Dr. Dar's notes. Indeed, Dr. Dar completed a form assessing the plaintiff's abilities to perform mental work-related activities on May 29, 2001, which noted that the plaintiff had "poor to no" abilities to relate in several areas, including ability to relate to co-workers, deal with public, deal with work stress, and maintain attention and concentration. (R. at 21-22.) However, Dr. Dar's treatment notes between May 3, 2000 and May 29, 2001, consistently indicate that the plaintiff was generally doing "better," or "fair," despite some difficulty dealing with stress. (R. at 22 (citing Ex. B-12F).) Moreover, the medical expert at the plaintiff's hearing, Dr. Tessnear, stated that he had relied on Dr. Dar's evaluations and case notes, but opined that an individual with absolutely no abilities to perform mental work-related activities would be cared for in an institution or home setting. (R. at 20.) More realistically, Dr. Tessnear stated that the evidence reflects that the plaintiff's "mental state has improved or stabilized over the last six months . . . [and that] Dr. Dar's progress notes . . . document that claimant was doing 'fair' with medications, was eating and sleeping, despite having some difficulty dealing with stressful situations." (R. at 20.) Therefore, the ALJ concluded that the

plaintiff "experiences moderate limitations in personal/social functioning which would equate to no detailed type of instructions; no work involving the general public; no paper work; no jobs exposing him to undue noise; and only occasional disruptions in persistence or concentration." (R. at 24.) This finding is supported by testimony of both the psychological experts at the hearing and the assessments made by the state agency medical consultants (*see* Ex. B-7F), and is thus supported by substantial evidence.

*B*

A determination of disability is controlled by a five-step sequential process under which an ALJ is to evaluate a claim. These steps include: (1) whether the claimant is working; (2) whether she has a severe impairment; (3) whether that impairment meets or equals a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1 (2004); (4) whether the impairment prevents the performance of past relevant work; and (5) whether the impairment prevents the performance of any work in the national economy. *See* 20 C.F.R. § 404.1520 (2004); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If the ALJ finds that the claimant has failed to meet any step of the process, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

Case 2:04-cv-00023-JPJ-PMS   Document 19   Filed 06/27/05   Page 9 of 11   Pageid#: 73

The burden of proof remains with the claimant through the fourth step; however, if he successfully reaches step five, then the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant can perform. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner may meet this burden by relying on the Social Security Regulation's Medical-Vocational Guidelines ( the "Grids") or by calling a VE to testify. *See* 20 C.F.R. § 404.1566 (2004).

Because the ALJ found that Hess could not perform his past relevant work, the ALJ had the burden of showing that there are jobs existing in significant number in the national economy that the plaintiff can perform. To do so, the ALJ can either rely on the Grids or, if the use of the Grids is inappropriate because the claimant has nonexertional impairments, elicit the testimony of a vocational expert. Here, the ALJ used a VE, who testified that a claimant with the plaintiff's restrictions "could work as assembler (1,000 regionally/52,000 nationally) and bench worker (1,100 regionally/33,100 nationally)."[4] (R. at 25.) The VE added that additional limitations such as restrictions of lifting weight no more than ten pounds, sitting for 30 to 45 minutes at most, and standing for 20 to 45 minutes at most would result in the same jobs at the same numbers. The Commissioner has thus met her burden of showing

---

[4] The ALJ noted that these jobs apply to both time periods in question. (R. at 25.)

-10-

that there are other jobs existing in significant numbers in the national economy that the plaintiff can perform, consistent with his residual functional capacity, age, education and work experience.

In sum, the Commissioner's determination that the plaintiff is not disabled and can perform light work with limitations is supported by substantial evidence in the record.

## *IV. Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: June 27, 2005

 /s/ JAMES P. JONES
Chief United States District Judge

-11-

Case 2:04-cv-00023-JPJ-PMS   Document 19   Filed 06/27/05   Page 11 of 11   Pageid#: 75